In the Matter of the Estate of ROBERT M. CHALMERS, Deceased.

Surrogate's Court, Albany County, June 3, 1937.

*Cooper, Erving & Savage* [*Edward S. Rooney* of counsel], for the petitioner.

*Watson & Looby*, for the respondent.

Rogan, S. This is a proceeding brought by the First Trust Company of Albany, as trustee named in the last will and testament of decedent, to compel the respondent, Jessie Chalmers Hagy, the executrix named therein, to turn over to it, as such trustee, certain property of the testator for the creation of three specific trusts for the benefit of (1) James A. Chalmers, in the sum of $25,000; (2) Katherine Kelner Chalmers, in the sum of $25,000; and (3) Grace Dalton Profitte in the sum of $80,000.

Robert W. Chalmers died December 30, 1932. His will was admitted to probate in this court on January 5, 1933, and letters testamentary were issued on the same day to the respondent herein, Jessie Chalmers Hagy.

No question whatever has been raised as to whether the executrix has or has not exercised good faith in the administration of the estate, nor is there any charge of fraud or dishonesty on her part or proof of personal advantage accruing to her. It is simply to what extent an executor may go in withholding from a trustee named in a will the capital or principal constituting the trust estate or fund.

In the first place, it is stated in *Matter of Kellogg* (214 N. Y. 460) that there is no rule of law which compels a trustee to wait until the final discharge of an executor before getting possession of trust funds. Unless it can be shown that there are modfying facts to lengthen the reasonable time, as contemplated by the statute, for an executor to turn over to a trustee the principal of a trust, we must apply the rules laid down by the courts dealing with the duties of executors and administrators. Mr. Justice Scott, in *Matter of Varet* (181 App. Div. 446, at p. 448), said: " The general rule in cases of administrators is that an executor or administrator *is* entitled to take a reasonable time within which to convert the assets of an estate into cash, and what is a reasonable time depends in each case upon the circumstances surrounding the particular case, * * *. It was said in *Matter of Weston* (91 N. Y. 502) that ' Where no modifying facts are shown to shorten or lengthen the reasonable time, the period of eighteen months may serve as a just standard,' although it was also held that ' While such period furnishes a convenient guide where no special circumstances exist, it must, after all, not be taken as a fixed or arbitrary standard.' " Again, in *Matter of Kohler* (231 N. Y. 353, at p. 365) it is written " The duties of executors, as the personal representatives named by a deceased in his will and appointed as such by the court, are primarily and generally to settle and distribute the estate of the

decedent. In the settlement of the estate their duties require them to collect the securities, sell the property and convert the assets of the estate into cash, and then pay therefrom the debts, funeral and testamentary expenses, and distribute the net residue in accordance with the provisions of the will."

Although the executrix qualified and entered upon her duties as such executrix on January 5, 1933, no assets whatever have been turned over to the trustee to set up the trusts above mentioned. The executrix in this case asserts and claims the power under the provisions of the will to exercise unusual authority in administering the property of the decedent, so as to postpone indefinitely the setting up of the trusts contemplated by the testator. It is to be noted the trustee has not had the benefit of an up-to-date accounting, so that neither it nor the court has sufficient information as to what assets are available for creation of the above trusts. It appears positively, however, that the value of the securities left by the testator have increased tremendously, and, if we are to take the word of the executrix, the value of decedent's interest in the John G. Myers Co. department store has increased likewise. While the partnership business of the John G. Myers Co. has been merged into the John G. Myers Co., Inc., it nowhere appears what stock is represented as decedent's share in the corporation, nor what its value is. The decedent's interest as of December, 1932, in the John G. Myers Co. was appraised, however, at the sum of $233,000. It would seem this interest, taken together with the present market value of the securities pledged as collateral with the First Trust Company of Albany to secure a loan to the decedent, would amply provide sufficient and available property for the establishment of the trusts.

It is argued by the executrix that, should the trusts be set up at this time, it would mean the liquidation of the John G. Myers Co. store, with a consequent loss to the executrix, who is the residuary legatee of decedent's estate. I am unable to agree with such a contention. The trustee is at liberty to hold the stock of the John G. Myers Co. as an investment, in the event any part of it comes into its hands, because paragraph twelfth of testator's will expressly provides that the trustees shall not be obliged to invest in so-called " Trust Securities." The trustee does not now and never has insisted that the business of the John G. Myers Co. be liquidated, and the provision in the tenth paragraph of the will that " It is my express wish and desire that the John G. Myers Company copartnership of which I am a member be terminated and liquidated as soon after my decease as business conditions, convenience and circumstances will permit " is wholly consistent with the creation

of the trusts. It is elementary that a person has the right by will to dispose of his estate in any way that he desires, provided only that he shall not contravene some established rule of law or public policy, and that the intention of the testator, as expressed in the will, must be given effect. I cannot accept the view of the executrix that the words of the wil vest in her a discretion so broad as to the time for setting up the trusts that the same cannot be restrained or limited. To do so would be to say in substance that she could hold on to the assets of this estate forever. Furthermore, the decedent's wish respecting the termination of the John G. Myers Co. business can be respected and fulfilled by the trustee as well as by the executrix.

It has been held that a trustee must use extreme diligence in gathering in the assets necessary for the establishment of a trust. If a trustee fails to exercise such care and diligence, any de ay is at his personal risk. (1 Perry on Trusts [7th ed.], § 440, p. 734; *Matter of Kline*, 280 Penn. St. 41; 124 A. 280.) In the *Kline Case* (*supra*) the court said: " There is here no evidence of the trustee's wilful default, but ample of supine negligence. The trust being active, it was the primary duty of the trustee to secure possession of the property, as otherwise the trust could not be executed." The trustee cannot be expected, nor can it be forced to sit idly by indefinitely and let the administration of the trusts be usurped by others than those chosen by the testator for such purpose, nor can it be determined judicially from the record before me that the period of four years and four months is not such a " reasonable time " within the contemplation of the statute and the will before me, within which the trusts should be set up as provided by the testator.

I, therefore, hold and decide the executrix should account forthwith, and that sufficient assets should be turned over to the petitioner for the erection of the trusts set forth in paragraphs numbered fourth, sixth and seventh of testator's will. Ordered accordingly.